Filed 4/15/26  P. v. Urrutia CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>NICHOLAS JAMES URRUTIA,<br><br>    Defendant and Appellant. | D085707<br><br><br><br>(Super. Ct. No. FWV21004726) |

APPEAL from a judgment of the Superior Court of San Bernardino County, Michael A. Camber, Judge.  Affirmed and remanded with directions.

Daniel J. Kessler, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

A jury convicted Nicholas James Urrutia of first degree murder (Pen. Code, § 187, subd. (a)) and found true that he personally used a deadly or dangerous weapon in the commission of the offense (§ 12022(b)(1)).  Appointed appellate counsel filed a brief under *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738 indicating he found no arguable issues for reversal on appeal.  Counsel asks us to review

the record for error as *Wende* requires. We offered Urrutia the opportunity to file his own brief, but he has not done so.

Based on our independent review of the record, we find no reasonably arguable appellate issues. We remand for the trial court to correct discrepancies between the court's oral pronouncement and the abstract of judgment. So modified, we otherwise affirm.

I.

A.

In late December 2021, Gabriel Fuentes entered his local bar at roughly 9:00 or 10:00 p.m.

About an hour later, Urrutia arrived wearing a plaid flannel shirt. Kristy J. and her aunt arrived at about 10:00 p.m., after Urrutia.

The bartender gave Urrutia water while he sat at the bar and talked with Fuentes a couple seats away. At first, Urrutia and Fuentes' conversation was friendly. About twenty minutes in, Urrutia mentioned someone in his family had died, and Fuentes was supportive. Fuentes asked whether Urrutia's parents could have done something about it, and Urrutia became "[v]ery angry and loud and completely changed."

Urrutia stood up, slammed his hands on the bar, and said, "'Are you calling my parents chickens?'" Fuentes looked shocked but stayed calm. Urrutia walked angrily out the front door. Fuentes went over to the jukebox next to the door.

According to Kristy J., Fuentes was behind her and her aunt, who were in the process of leaving, when the door swung back and "startled" her. She saw Urrutia standing in the doorway holding the door open with his foot, and she and her aunt went around him. As they did so, Kristy saw Urrutia was holding a knife flat against his chest. He seemed to be looking past her and

2

her aunt. The door slammed behind them and they walked away. Kristy's aunt gave a similar account.

According to the bartender, when Urrutia first left the bar, she thought he might be going to retrieve a weapon. She grabbed the keys to the door and went to lock it, but before she got around the bar, Urrutia stormed back in. After pushing the door inwards, Urrutia stood face to face with Fuentes and screamed something akin to "You can't call my parents chickens" before "very forcefully" putting his hands on Fuentes' chest. Fuentes stumbled backward into a pool table, and Urrutia left.

Fuentes looked bewildered for 30 seconds or so, at which point the bartender noticed he was having difficulty breathing. She came around the bar to check on him. The bartender asked if Fuentes was okay, but Fuentes collapsed.

The bartender asked some patrons to help so she could call 911, and a female patron said she knew CPR. As soon as the patron began CPR, blood covered her hands. She lifted Fuentes' shirt and the bartender could see "stab wounds and blood everywhere."

Fuentes was transported to the hospital, where he was pronounced dead. Fuentes was stabbed in his sternum and below his right nipple. The stab wound to the sternum penetrated the aorta and caused his death.

B.

Later the same day of the stabbing, police officers were tasked with locating the murder suspect. The description of the suspect was a "Hispanic male wearing a red hat and a flannel shirt." The officers also knew the suspect's license plate number and that he drove a black sedan. An officer in an unmarked vehicle spotted the sedan and followed it to a motel parking lot,

3

where Urrutia was arrested.  While processing the car later, the police located a blue hat with a red bill.

Urrutia was charged with first degree murder, and it was alleged he personally used a deadly or dangerous weapon in committing the offense.

In the days immediately following the stabbing, the police obtained surveillance video from several stores in the same strip mall as the bar.  The videos, which were played for the jury, showed a man wearing a long-sleeved, blue flannel shirt with a backwards dark hat with a red bill engage in a "commotion at the bar door" and then leave by car.  The videos also showed the man was wearing the same shoes as those Urrutia was wearing when he was arrested.  The videos showed Urrutia leaving the bar several times to go to his car and then reentering the bar.  At 11:49 p.m., he exited the bar to relocate his car.  He reentered the bar at 12:05 a.m. and then exited and drove away at 12:23 a.m.

About a week after Fuentes died, "a large group of people"—at least five—came into the bar on an evening when the same bartender was on duty.  They threatened the bartender about testifying in the case.  Jail calls, which the jury heard, led the police to believe Urrutia was involved in the bartender's intimidation despite being in custody.

C.

At the end of the People's case, defense counsel moved to dismiss under section 1118.1, which motion the court denied.

Over the defense's objection, the court instructed the jury on CALCRIM Nos. 371 (consciousness of guilt—suppression of evidence) and 372 (defendant's flight).  Over the People's objection, the court also instructed the jury on CALCRIM Nos. 522 (provocation), 570 (voluntary manslaughter—

4

heat of passion), and 640 (deliberations and completion of verdict forms) rather than its alternative version 641.

During closing arguments, the People argued Urrutia was guilty of first degree murder, he demonstrated consciousness of guilt by fleeing the scene and arranging the intimidation of the bartender, and he was not adequately provoked to make his crime manslaughter. The defense focused on discrediting the bartender's testimony, demonstrating Urrutia's lack of premeditation and deliberation, and establishing Fuentes' provocation of Urrutia. In rebuttal, the People disputed Urrutia was provoked.

The jury found Urrutia guilty of first degree murder and found true the allegation that he personally used a deadly or dangerous weapon.

Urrutia waived his right to a jury in the bifurcated trial on any prior convictions and circumstances in aggravation and agreed to defer that portion of the trial until sentencing. After hearing the People's evidence, the court found true beyond a reasonable doubt that Urrutia suffered a prior conviction under both sections 1170.12(a) through (d) and 667(a)(1).

D.

During sentencing, the court indicated it had received and reviewed the probation report, the defense's sentencing position paper and motion under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, and the People's response. Defense counsel argued the court should grant his *Romero* motion because the strike prior—an attempted robbery—was nearly 10 years old. The People argued denial of the motion was warranted given Urrutia had numerous convictions since the late 1990s, including after the strike prior, and the present offense was "serious[]" and "violent." The court denied the motion, noting the many factors it was to consider and expressly relying on

5

"the horrific facts of this case," Urrutia's criminal history, and his past parole violations.

The court denied probation and sentenced Urrutia to a prison term of 25 years to life for his murder conviction, doubled by the strike prior to 50 years to life. The court also imposed a consecutive one-year prison sentence for the weapon enhancement and a consecutive five-year prison sentence for his serious violent felony prior, for an aggregate prison sentence of 56 years to life. The court orally imposed a $40 court operations assessment, a $30 court facilities assessment, a restitution fund fine of $5,000, and victim restitution in the amount of $12,655.97 plus $489.96, or $13,145.93. The court noted Urrutia was entitled to no conduct credit under section 2933.2 and 1,019 days of actual credit.

The abstract of judgment specifies victim restitution in the amount of $12,655.97 and omits any reference to the restitution fund fine. The abstract of judgment also imposes a $300 restitution fine under section 1202.4(b) and a $300 parole revocation fine under section 1202.45 that were not orally imposed.

## II.

Urrutia's counsel filed a *Wende* brief setting forth a statement of the case and facts, urging no grounds for reversal, and asking us to independently review the record for error. To assist our review under *Anders*, 386 U.S. at pp. 744-745, counsel identified the following issues he considered in evaluating the potential merits of this appeal:

(1) "Whether the trial court prejudicially erred by allowing the jury to hear the recordings of [Urrutia]'s telephone calls from jail."

(2) "Whether the trial court prejudicially erred by allowing the prosecution to elicit testimony from [the bartender] that a few

6

days after the stabbing incident, unknown people came into the pub and warned her not to testify."

(3)     "Whether the trial court prejudicially erred by instructing the jury under CALCRIM No. 371 that it could consider [Urrutia]'s purported complicity in the alleged threat to [the bartender] not to testify as showing consciousness of guilt."

(4)     "Whether the trial court prejudicially erred by instructing the jury under CALCRIM No. 372 that it could consider [Urrutia]'s flight as showing consciousness of guilt."

(5)     "Whether sufficient evidence supports the jury's verdict that [Urrutia] committed willful, deliberate, and premeditated murder."

(6)     "Whether the trial court erred by refusing to strike [Urrutia]'s 'strike' in the interests of justice."

We reviewed the entire record as required by *Wende* and *Anders* and discovered no arguable issues for reversal on appeal.  Competent counsel has represented Urrutia on this appeal.

We, however, identified several discrepancies between the court's oral pronouncement and the abstract of judgment.

First, during the sentencing hearing, the court awarded victim restitution totaling $13,145.93 and imposed a restitution fund fine of $5,000. Yet the abstract of judgment only imposes part of the victim restitution and omits any reference to the restitution fund fine.  In general, the oral pronouncement controls, so we amend the abstract of judgment accordingly. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185, 188.)

Second, the abstract of judgment reflects a $300 restitution fine under section 1202.4(b) and a $300 parole revocation fine under section 1202.45

7

that were not orally imposed during the sentencing hearing. Under section 1202.4(b), "the court shall impose a separate and additional restitution fine, unless it finds compelling and extraordinary reasons for not doing so and states those reasons on the record." Under section 1202.45, if a defendant's sentence includes a period of parole or the defendant is subject to post-release community supervision or mandatory supervision, the court shall impose an additional fine in the same amount as the section 1202.4 fine. The People did not object to the court's failure to orally impose these fines. Because such fines are discretionary given the court's ability to not impose them if it makes certain findings on the record, the People forfeited the imposition of the fines by not objecting. (*People v. Tillman* (2000) 22 Cal.4th 300, 303.) Accordingly, we direct those fines to be stricken.

III.

We remand to the trial court with directions to amend the abstract of judgment to reflect, as orally imposed, (1) victim restitution in the amount of $12,655.97 plus $489.96, for a total victim restitution award of $13,145.93; and (2) a restitution fund fine in the amount of $5,000. We also (3) strike the $300 restitution fine under section 1202.4(b) and $300 parole revocation fine under section 1202.45, which were not orally imposed. We direct the trial court to prepare and forward a copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation. We otherwise affirm.

CASTILLO, J.

WE CONCUR:

BUCHANAN, Acting P. J.

RUBIN, J.